1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

DAVID CHENEY, individually and on behalf of all those similarly situated,

No. 3:22-cv-5942

10

Plaintiff,

NOTICE OF REMOVAL

11

v.

12
13

PUGET SOUND ENERGY, INC., a Washington Public Utility Corporation,

14

Defendant.

15
16

**TO:    THE CLERK AND HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON**

17
18
19
20
21

Pursuant to 28 U.S.C. §§ 1331 and 1441 and 29 U.S.C. § 185 (Section 301 of the Labor Management Relations Act or "LMRA"), Defendant Puget Sound Energy, Inc. ("PSE") removes this action to this Court from the Washington State Superior Court for Pierce County. In support of this Notice, PSE respectfully states:

22

**I.    STATE COURT ACTION**

23
24
25

1.    Plaintiff David Cheney ("Plaintiff") commenced this action on October 3, 2022 by filing a Class Action Complaint for Damages ("Complaint") in the Pierce County Superior Court, where it was assigned Case No. 22-2-09205-5. PSE was served with the Summons and

26

NOTICE OF REMOVAL – 1
(No. 3:22-cv-5942)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

159126129.4

Complaint on November 4, 2022 and filed an Answer to Plaintiff's Complaint on November 28, 2022. No further proceedings in this matter have been held in the Pierce County Superior Court.

2.      Plaintiff's Complaint raises six causes of action alleging (1) failure to pay wages for all hours worked, (2) unlawful deductions from wages for paid meal periods, (3) failure to ensure rest periods and failure to compensate for violations of rest period rules, (4) failure to provide meal periods and failure to compensate for violations of meal period rules, (5) failure to pay overtime, and (6) willful withholding of wages. Plaintiff alleges violations of the Washington Minimum Wage Act, Wage Payment Act, Industrial Welfare Act, and Wage Rebate Act.

## II.      GROUNDS FOR REMOVAL

3.      This action is removable under 28 U.S.C. § 1441 because Plaintiff's claims are preempted by and/or based on federal law. *See* 29 USC § 185(c) (giving federal courts jurisdiction over suits involving labor organizations); *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 560 (1968) ("An action arising under [§] 301 [of the LMRA] is controlled by federal substantive law even though it is brought in a state court" and "is within the 'original jurisdiction' of the District Court."); 28 USC § 1331 (providing for federal question jurisdiction).

### A.      Plaintiff's Claims are Preempted by Federal Law

4.      Plaintiff's claims are preempted, in whole or in part, by federal labor law. The Ninth Circuit uses a two-part test to determine whether state law claims are preempted under Section 301. First, the court must determine "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA [a Collective Bargaining Agreement]." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016) (quoting *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007)). If the right exists independent of the CBA, the court then asks "whether the right 'is nevertheless substantially dependent on analysis of a collective bargaining agreement.'" *Id.* at 1032-33 (quoting *Burnside*, 491 F.3d at 1059). A state law claim is preempted to the extent it raises a question about the

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    scope, meaning, or application of the CBA. *See Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152-

2    53 (9th Cir. 2019) (citing *Livadas v. Bradshaw*, 512 U.S. 107, 125 (1994)).

3            Plaintiff's claims are preempted under both parts of this test. Plaintiff's meal period

4    claims are preempted under the first part of the test, his continuous workday and travel time

5    claims are preempted under the second part of the test, and his overtime and willful withholding

6    claims are preempted to the extent they flow from these substantive claims.

7            **1.    The Meal Break Claims**

8            5.    Plaintiff's meal period claims (the second and fourth causes of action) are

9    preempted under the first part of the Ninth Circuit's two-part test because his right to meal

10   periods is conferred by the CBA between PSE and the United Association of Journeymen and

11   Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, Locals 32

12   and 26 ("UA"), not by virtue of state law.

13           6.    Plaintiff purports to base his meal period claims on rules set forth in a Washington

14   regulation adopted to implement the Industrial Welfare Act (RCW 49.12).  *See* Compl. ¶¶ 7.2-

15   7.3, 9.2-9.5; WAC 296-126-092. But under the terms of the Industrial Welfare Act itself, for

16   employees like Plaintiff, those rules are superseded by the CBA. Specifically, the Act provides:

17                   [R]ules adopted under [RCW Ch. 49.12] regarding appropriate …
                     meal periods as applied to employees in the construction trades
18                   may be superseded by a collective bargaining agreement
                     negotiated under the national labor relations act, 29 U.S.C. § 151 et
19                   seq., if the terms of the collective bargaining agreement covering
                     such employees specifically require … meal periods and prescribe
20                   requirements concerning those … meal periods.

21   RCW 49.12.187; *see also Stafford v. Key Mech. Co.*, Case No. C21-5063-BHS-MLP, 2021 WL

22   2211287, at *5 (W.D. Wash. Apr. 27, 2021) (recommending dismissal of meal period claim

23   following removal where controlling CBA specifically required meal periods), *adopted*, 2021

24   WL 2206496 (June 1, 2021).

25           7.    Plaintiff was employed in the construction trades. He held the job of Corrosion

26   Control Technician, which is a journey-level construction trade job that entails construction,

NOTICE OF REMOVAL – 3
(No. 3:22-cv-5942)

159126129.4

1    installation, maintenance, and inspection of gas pipelines. Declaration of Heather MacLaren in

2    support of Notice of Removal ("MacLaren Decl.") at ¶ 2, Ex. A at 1 (Corrosion Control Tech Job

3    Description). This job is part of the bargaining unit represented by the UA. The UA represents

4    PSE's pipefitter and related gas pipeline construction trades jobs and putative class members in

5    those jobs. *Id.* at ¶ 2.

6        8.    The terms and conditions of Plaintiff's employment were governed by the UA

7    CBA, which was negotiated under the NLRA. *See generally* MacLaren Decl. at ¶¶ 3-4, Exs. B &

8    C (UA CBA excerpts).

9        9.    The UA CBA "specifically require[s] … meal periods" and "prescribe[s]

10   requirements concerning those … meal periods." *See id.* at ¶ 3, Ex. B, § 7.4, App. B.[1]

11       **2.    The Continuous Workday Claim**

12       10.    Plaintiff's first cause of action is subject to federal jurisdiction because its

13   resolution depends substantially on analysis of the CBA. As such, it is preempted by § 301.

14       11.    Plaintiff alleges PSE failed to pay him and putative class members for all hours

15   worked "during their continuous workday starting with the vehicle inspection prior to leaving

16   home and ending with the inspection of the vehicle upon arrival home." Compl. ¶ 6.2.

17   Underpinning this claim are Plaintiff's contentions that he kept a company vehicle at home and

18   performed pre-trip inspections on that vehicle before leaving home each day. Compl. ¶ 4.8. He

19   similarly claims he performed post-trip inspections upon returning home from work at the end of

20   the day. *Id.* According to Plaintiff, these inspections marked the start and end of his workday.

21   *See* Compl. ¶ 4.13. And, as such, according to Plaintiff, his commute was compensable time

22   even if it does not otherwise qualify as "hours worked" under the Minimum Wage Act. *Id.*

23

24

25       [1] So too does a separate CBA between PSE and the International Brotherhood of Electrical Workers, Local
Union No. 77 ("IBEW"), which governs terms and conditions of employment for putative class members in
26   construction trades associated with PSE's electrical power generation and transmission services. *See* MacLaren Decl.
at ¶¶ 5-6, Exs. D & E at §§ 2.2(a, c) (IBEW CBA excerpts).

NOTICE OF REMOVAL – 4
(No. 3:22-cv-5942)

159126129.4

12.     This theory of the case necessarily requires analyzing the CBA that governed the terms and conditions of Plaintiff's employment. Specifically, the Court must analyze and interpret the UA CBA to discern how the parties intended to handle inspections and commute time. With respect to the putative class, the claim necessarily requires analysis of the UA CBA and, to the extent the Complaint as pled encompasses claims on behalf of electrical workers, the IBEW CBA.

### a.     This Court will need to interpret the CBA to determine when and where employees should conduct inspections.

13.     The inspections Plaintiff references in his Complaint are mandated by the United States Department of Transportation ("DOT"). *See* Compl. ¶¶ 4.8, 4.13, 6.2; 49 C.F.R. §§ 392.7, 396.11, 396.13.

14.     Whether performing these inspections constitutes "hours worked" under the Minimum Wage Act turns on the "preparatory and concluding activities" analysis outlined in the Washington Department of Labor and Industries' ("L&I") Administrative Policy ES.C.2. *See Robertson v. Valley Commc'ns Ctr.*, 18 Wn. App. 2d 122, 131, n. 6 (2021). Under Policy ES.C.2, as embraced by Washington courts, preparatory activities are not considered hours worked if an employee has control over when or where those activities may be conducted. *Id.*

15.     Here, the CBA governing Plaintiff's employment requires interpretation as to whether PSE requires employees perform inspections at a certain time or in a certain location. Discerning whether the inspections at issue qualify as compensable preparatory activities requires more than simply applying provisions of the CBA; it requires analyzing and interpreting provisions of the CBA.

16.     For example, the relevant UA CBAs (one operative from 2017-2021 and the other from 2021-2025) leave up for interpretation whether and when drivers are to perform vehicle inspections. The contract language establishing the basic rule appears clear and unambiguous: Both UA CBAs, which together cover the entire period at issue in this case, require that

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

159126129.4

1  "employees driving Company vehicles from home will commute on their own time and report

2  for work at their scheduled starting time at their designated headquarters or alternative starting

3  locations;" that at the end of the workday, employees "will report to a designated Company

4  location … and will then drive home on their own time;" that they "will not perform any work

5  before reporting to the designated location in the morning or after leaving the designated location

6  to go home at the end of the workday;" and that "[a]ll … stocking, servicing, maintaining,

7  inspecting and cleaning of the vehicle will be done on paid time during the employee's

8  scheduled shift." MacLaren Decl. at ¶ 3, Ex. B at § 9.4(A)-(B); *id.* at ¶ 4, Ex. C at 59 (Nov. 30,

9  2007 Letter of Agreement). This language appears to establish a rule that inspections of take-

10  home vehicles are *never* to be performed at home.

11        But other provisions introduce ambiguity that requires contract interpretation to resolve

12  Plaintiff's claims. For example:

13  •  The 2021 UA CBA adds the following language, which was not part of the 2017

14     CBA: "Those employees who take vehicles home will be paid to perform vehicle

15     inspections per DOT guidelines." *Id.* at ¶ 3, Ex. B at § 9.4(A). This language

16     appears to contemplate the possibility that employees may at times perform

17     inspections *before* leaving home.

18  •  The UA CBA acknowledges different rules for "call outs." The 2017 CBA says

19     "[e]mployees who take a company vehicle home … shall be paid beginning when

20     they receive the call, until they return home, (port to port) unless they continue

21     into their regular shift." *Id.* at ¶ 4, Ex. C at § 8.5(B); *see also id.* at ¶ 3, Ex. B at §

22     8.7(B)(2) (same except "shall" changed to "will"). This language (which ensures

23     that employees are paid for *any* preparatory activities associated with call outs)

24     may or may not allow employees greater flexibility as to when and where to

25     perform pre-trip inspections associated with call outs.

26

NOTICE OF REMOVAL – 6
(No. 3:22-cv-5942)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

159126129.4

17.     Plaintiff himself acknowledges it is not clear what, precisely, the CBA requires. He claims PSE "maintains conflicting policies and practices regarding inspections." Compl. ¶ 4.12. Because the Court will need to analyze what is meant by the UA CBA and whether and how those CBA terms interact with other PSE policies, Plaintiff's wage claims are preempted by federal law and appropriately removed to this Court.

18.     With respect to the putative class, the claims of class members who are represented by the UA would, as described above, require analysis of the UA CBA.[2]

**b.     This Court will need to interpret the CBA to determine how the parties intend to treat commute time.**

19.     Determining if and when Plaintiff's commute time is compensable similarly relies on analyzing and interpreting the language of the CBA.

20.     One way to determine whether commute time is compensable is to determine whether, during their commute, an employee is "on duty." WAC 296-126-002(8); *see also Pierce v. Heath Consultants Inc.*, No. C10–585Z, 2011 WL 2560254, at *4 (W.D. Wash. June 27, 2011).

21.     L&I Administrative Policy ES.C.2 provides a list of non-exclusive factors that courts have used to evaluate whether employees are "on duty" in similar cases. Those factors include: (1) "the extent to which an employee is free to make personal stops and engage in personal activities on the drive … or whether the vehicle may only be used for company business;" (2) "[t]he extent to which the employee is required to respond to work-related calls or to be redirected while en route;" (3) "[w]hether the employee is required to maintain contact with the employer" (presumably during the commute); and (4) "[t]he extent to which the employee receives assignments at home and must spend time" preparing for those "before beginning the

---

[2] To the extent the Complaint as pled encompasses claims on behalf of electrical workers, those claims would likewise involve analysis of the IBEW CBA. For example, the IBEW CBAs' "call back" section provides that "[o]vertime pay shall begin when work commences at the employee's assigned normal work location." MacLaren Decl. at ¶¶ 5-6, Exs. D-E, § 2.3(b). But the CBA does not define what "normal work location" means, nor does it define what it means for work to "commence." The Court will need to interpret the CBA to identify when, where, and how IBEW members begin work before it can determine whether they are being paid for all time worked.

NOTICE OF REMOVAL – 7
(No. 3:22-cv-5942)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

159126129.4

1    drive." Wash. Dept. of Lab. & Indus., *Hours Worked*, No. ES.C.2 at 3-4 (2021),

2    https://www.lni.wa.gov/workers-rights/_docs/esc2.pdf.

3        22.    The UA CBA requires employees start and end their workdays "at their

4    designated headquarters or alternative starting locations," that they "not perform any work before

5    reporting to the designated location in the morning or after leaving the designated location to go

6    home," and that "[t]he Laptop computer is not to be turned on until the employee's scheduled

7    start time and is to be turned off when the employee leaves for home at the end of the workday."

8    MacLaren Decl. at ¶ 3, Ex. B at § 9.4(B). These requirements appear to be clear and

9    unambiguous and would appear to foreclose Plaintiff's commute time claim based on the factors

10   outlined in L&I Policy ES.C.2. But, once again, other contract terms introduce ambiguity. As

11   discussed above, the CBA contemplates employees *may* be "called out" from home. *See id.* at §

12   8.7. It also provides for voluntary participation in an "Emergency Response Program" for gas

13   emergencies—a clear and substantial departure from the usual Section 9.4 rules. *See id.* at § 6.7.

14       23.    This Court will need to analyze and interpret these and other CBA terms to

15   determine how the Policy ES.C.2 factors apply to Plaintiff's commute time claim.

16       24.    Plaintiff apparently concedes there is, at best, confusion over what rules control

17   here. *See* Compl. ¶ 4.12. His admitted lack of clarity betrays the necessity of analyzing the CBA

18   to resolve this dispute.

19       25.    For the reasons outlined in Paragraph 18, resolution of the putative class

20   members' claims will require similar analysis of the UA CBA (and, to the extent the Complaint

21   as pled reaches electrical workers, the IBEW CBA terms).

22   **B.    In Any Event, Plaintiff's "Continuous Workday" Claim is Based on Federal Law**

23       26.    Federal courts have jurisdiction over "civil actions arising under the Constitution,

24   laws, or treaties of the United States." 28 U.S.C. § 1331.

25       27.    Although Plaintiff's first cause of action purports to allege violations of

26   Washington state's Minimum Wage Act and Wage Payment Act, the claim is predicated on the

NOTICE OF REMOVAL – 8
(No. 3:22-cv-5942)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

159126129.4

1    so-called "continuous workday" rule, which is a *federal* doctrine. *See* Compl. ¶ 6.2 (alleging

2    Plaintiff is owed wages "for all hours worked … during [his] continuous workday"); *see also*

3    Compl. ¶¶ 4.13, 4.28, 5.4(1, 2)). Washington law and its implementing regulations make no

4    reference to the "continuous workday" principle. Nor is Defendant aware of any court decision

5    recognizing the doctrine under Washington law.

6        28.    "Continuous workday" is a federal doctrine based on a Federal Labor Standards

7    Act ("FLSA") regulation. The Department of Labor adopted 29 C.F.R. § 790.6(b) to clarify the

8    effect of the Portal-to-Portal Act. The U.S. Supreme Court christened that regulation the

9    "continuous workday rule" in *IBP, Inc. v. Alvarez*, 546 U.S. 21, 28-29 (2005). The rule states

10   that, as used in the Portal-to-Poral Act, "workday" means "the period between the

11   commencement and completion on the same workday of an employee's principal activity or

12   activities." 29 C.F.R. § 790.6(b).

13       29.    Under the well-pleaded complaint rule, if a "plaintiff's statement of his own cause

14   of action shows" the claim is based on federal law, the "suit arises under the Constitution and

15   laws of the United States." *See Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152

16   (1908). Here, Plaintiff's statements show his first cause of action is based on federal law: He

17   repeatedly and explicitly invokes a federal law principle—the "continuous workday" doctrine—

18   throughout the Complaint. *See, e.g.*, Compl. ¶ 6.2; *see also* Compl. ¶¶ 4.13, 4.28, 5.4 (1, 2).

19       30.    Because Plaintiff's own statement of his claim relies on federal law, his first cause

20   of action "arises under the … laws of the United States" and is a federal claim over which this

21   court has federal question jurisdiction. *See* 28 U.S.C. § 1331.

22   **C.    The Remaining Claims**

23       31.    Finally, Plaintiff's overtime and willful withholding claims are derivative of and

24   dependent on the "continuous workday" claim and meal period claims discussed above.

25   Determination of the overtime and willful withholding claims turns on analysis of claims that

26   preempted, based on the federal "continuous workday" doctrine, or both. As such, Plaintiff's

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

remaining causes of action are also appropriately removed to this court. *See* Compl. ¶¶

10.1-11.3; *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mf*g., 545 U.S. 308, 313-14

(2005) (explaining state law claims that necessarily raise substantial federal issues warrant

federal jurisdiction)*.

### III.    ACTION REMOVABLE

32.    This action is removable to this Court under 28 U.S.C. § 1441 because this Court

would have had original jurisdiction over Plaintiff's claims had they been initially filed in federal

court; several of the claims are preempted by or based on federal law. *See* 28 U.S.C. § 1331

(providing for federal question jurisdiction), 29 U.S.C. § 185(c) (giving federal court jurisdiction

over suits involving labor organizations); *Avco Corp*, 390 U.S. at 560.

33.    This Court is the district court of the United States for the district and division

"embracing the place where [the state court] action is pending," and is therefore the appropriate

court for removal. 28 USC § 1441(a).

34.    PSE removes this action to the Tacoma Division of this Court because, as pled,

Plaintiff's claims arose in Pierce County and the action is pending there. *See* Compl. ¶ 2.1-2.4.

35.    This Notice is filed with the Court within thirty days after PSE received the

Complaint, in accordance with 28 U.S.C. § 1446(b).

### IV.    PLEADINGS FILED

36.    Copies of all process and pleadings filed in this case and found in the files of the

Superior Court of the State of Washington for Pierce County are attached to the Verification of

State Court Record filed with this Notice.

NOTICE OF REMOVAL – 10
(No. 3:22-cv-5942)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

159126129.4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Dated: December 5, 2022

By: _s/ Chelsea Dwyer Petersen_

Chelsea Dwyer Petersen, Bar No. 33787
Charles N. Eberhardt, Bar No. 18019
Margo S. Jasukaitis, Bar No. 57045
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000
CDPetersen@perkinscoie.com
CEberhardt@perkinscoie.com
MJasukaitis@perkinscoie.com

*Attorneys for Defendant Puget Sound Energy, Inc.*

NOTICE OF REMOVAL – 11
(No. 3:22-cv-5942)

159126129.4

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on December 5, 2022, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notification of the filing to the email addresses indicated on the Court's Electronic Mail Notice List.

Dated: December 5, 2022

s/ *Mary Lyles*
Mary Lyles

CERTIFICATE OF SERVICE
(No. 3:22-cv-5942)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

159126129.4