UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DAVID CHENEY,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>PUGET SOUND ENERGY, INC.,<br><br>　　　　　　Defendant. | CASE NO. C22-5942 BHS<br><br>ORDER |

This matter is before the Court on Plaintiff David Cheney's motion to remand the cause to Pierce County Superior Court, Dkt. 15.[1] Because Defendant Puget Sound Energy, Inc., (PSE) fails to satisfy its burden of proving that removal was proper, the motion to remand is granted.

## I.　BACKGROUND

Cheney worked for PSE as a corrosion control technician. Dkt. 5, ¶ 2. During his term of employment, this position fell within the ambit of two collective bargaining agreements (CBAs) between PSE and the United Association of Journeyman and

---

[1] Both parties request oral argument. *See* Dkt. at 1; Dkt. 16 at 1. These requests are DENIED.

Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada.[2] *Id.* ¶ 2.

On October 3, 2022, Cheney filed a class action complaint against PSE in Pierce County Superior Court, alleging that PSE engaged in various violations of Washington law. Dkt. 1-1. Cheney asserts that PSE (1) failed to pay wages for all hours worked in violation of Washington's Minimum Wage Act and Wage Payment Act, *id.* ¶¶ 6.1–6.3, (2) unlawfully deducted from wages for paid meal periods in violation of Washington's Industrial Welfare Act, Minimum Wage Act, and Wage Rebate Act, *id.* ¶¶ 7.1–7.4, (3) failed to ensure adequate rest periods in violation of the Industrial Welfare Act and failed to compensate for such violations under the Minimum Wage Act and Wage Payment Act, *id.* ¶¶ 8.1–8.7, (4) failed to provide adequate meal periods in violation of the Industrial Welfare Act and failed to compensate for such violations under the Minimum Wage Act and Wage Payment Act, *id.* ¶¶ 9.1–9.7, (5) failed to pay overtime wages in violation of the Minimum Wage Act, *id.* ¶¶ 10.1–10.3, and (6) willfully withheld wages in violation of the Wage Rebate Act, *id.* ¶¶ 11.1–11.3.

Cheney alleges that PSE had a policy or practice of requiring or allowing employees to inspect, maintain, or fuel company vehicles before and after calling employees to a jobsite without compensating them for performing these activities. Dkt. 1-1, ¶¶ 4.1–4.2, 4.4–4.13. Cheney also claims that PSE failed to provide adequate rest periods to himself and other employees every three consecutive hours. *Id.* ¶¶ 4.15–4.19.

---

[2] One of these CBAs controlled from 2017 to 2021, Dkt. 5 at 16, and the other controls from 2021 to present, *id.* at 8.

He further claims that PSE failed to provide adequate meal periods to himself and other employees. *Id.* ¶ 4.20–4.26. Cheney asserts that, because of these policies or practices, he and other employees frequently worked over 40 hours per week and that PSE did not pay overtime wages for such time. *Id.* ¶ 4.14, 4.27.

On December 5, 2022, PSE removed the case to this Court, asserting that Cheney's claims are either preempted by or based on federal law. Dkt. 1 at 2. Cheney moves to remand. Dkt. 15. PSE opposes this motion. Dkt. 16. The parties' arguments are addressed below.

## II.  DISCUSSION

Cheney contends that the Court lacks federal question jurisdiction over all his claims. Dkt. 15. This is so, he asserts, because his claims arise under state law and do not substantially depend on the analysis of a collective bargaining agreement (CBA). *See generally id.* PSE argues that the Court has federal question jurisdiction over nearly all of Cheney's claims.[3] Dkt. 16. It contends that Cheney asserts a claim under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. *Id.* at 10–12. It also argues that § 301 of the Labor Management Relations Act (LMRA) preempts Cheney's claims both for failure to provide meal periods in conformity with Washington law and for failure to pay wages for all hours worked under the Minimum Wage Act. *Id.* at 5–10, 12–17.

---

[3] PSE concedes that the Court does not have such jurisdiction over Cheney's claim that it failed to provide rest periods in conformity with Washington law. Dkt. 16 at 4. However, it asserts that the Court should exercise supplemental jurisdiction over this claim under 28 U.S.C. § 1367(a).

1   Generally, "any civil action brought in a State court of which the district courts of
2   the United States have original jurisdiction, may be removed . . . to the district court of
3   the United States for the district and division embracing the place where such action is
4   pending." 28 U.S.C. § 1441. Federal district courts "have original jurisdiction of all civil
5   actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §
6   1331. "The removal statute is strictly construed, and any doubt about the right of removal
7   requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d
8   1241, 1244 (9th Cir. 2009). The removing party bears the burden of establishing that
9   removal was proper. *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599
10  F.3d 1102, 1107 (9th Cir. 2010).

11  The Court first addresses whether Cheney advances a claim under the FLSA. PSE
12  asserts that Cheney advanced such a claim simply because his complaint uses the term
13  "continuous workday" in several locations. Dkt. 16 at 4, 11–12. This argument is
14  unpersuasive. Cheney's complaint alleges violations of only Washington statutes: the
15  Washington Minimum Wage Act, the Wage Payment Act, the Wage Rebate Act, and
16  Industrial Welfare Act. *See* Dkt. 1-1, ¶¶ 6.1–11.3. Cheney also explains that he "asserts
17  only claims under state law and does not even mention, much less assert claims under,
18  the FLSA." Dkt. 15 at 13. The Court accepts this explanation. Cheney's mere use of the
19  term "continuous workday" in the complaint does not mean that he advances a claim
20  under the FLSA, and the Court will not force Cheney to prosecute a claim that he does
21  not intend to advance.

22

ORDER - 4

The Court next considers whether any of Cheney's remaining claims are preempted by federal law. Section 301 of the LMRA vests federal district courts with jurisdiction to hear "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).

"A claim that falls within § 301's ambit 'is considered, from its inception, a federal claim,' and so is subject to removal based on federal question jurisdiction." *McCray v. Marriott Hotel Servs., Inc.*, 902 F.3d 1005, 1009 (9th Cir. 2018) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)). "This is true even in some instances in which the plaintiffs have not alleged a breach of contract in their complaint, if the plaintiffs' claim is either grounded in the provisions of the labor contract or requires interpretation of it." *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). "Otherwise, parties would be able 'to evade the requirements of section 301 by relabeling their contract claims as claims for tortious breach of contract' or some other state cause of action, and thus 'elevate form over substance.'" *Id.* (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985)).

"To prevent such evasion, the *Lueck* line of section 301 preemption cases and its progeny require, first, an inquiry into whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA." *Burnside*, 491 F.3d at 1059. "If the right exists solely as a result of the CBA, then the claim is preemeted, and our analysis ends there." *Id.* "If, however, the right exists independently of the CBA, we

must still consider whether it is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.'" *Id.* (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)). "If such dependence exists, then the claim is preempted by section 301; if not, then the claim can proceed under state law." *Burnside*, 491 F.3d at 1059–60.

"Where a party defends a state cause of action on the ground that the plaintiff's union has bargained away the state law right at issue, the CBA must include 'clear and unmistakable' language waiving the covered employee's state right 'for a court even to consider whether [the waiver] could be given effect.'" *Cramer v. Consolidated Freightways Inc.*, 255 F.3d 683, 692 (9th Cir. 2001) (quoting *Lividas v. Bradshaw*, 512 U.S. 107, 125 (1994)). "[A] state law claim may avoid preemption if it does not raise questions about the scope, meaning, or application of the CBA." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1153 (9th Cir. 2019).

PSE asserts that Cheney's claims related to its failure to provide meal periods in conformity with Washington law are preempted by section 301 of the LMRA. Dkt. 16 at 3–9. It argues that, under RCW 49.12.187, the CBAs at issue supersede Washington law regarding meal periods because those CBAs specifically require meal periods and prescribe requirements concerning those meal periods. *Id.* at 3. It further asserts that such a result is required even though the CBAs at issue do not address rest periods. *Id.* at 5.

1     RCW 49.12.187 provides that CBAs covering employees in the construction

trades[4] may supersede state rules concerning rest and meal breaks under the following

circumstances:

> This chapter shall not be construed to interfere with, impede, or in any way dimmish the right of employees to bargain collectively with their employers through representatives of their own choosing concerning wages or standards or conditions of employment. However, rules adopted under this chapter regarding appropriate rest and meal periods as applied to employees in the construction trades may be superseded by a collective bargaining agreement negotiated under the national labor relations act, 29 U.S.C. Sec. 151 et seq., if the terms of the collective bargaining agreement covering such employees specifically require rest *and* meal periods and prescribe requirements concerning those rest *and* meal periods.

(Emphasis added).

This conjunctive language indicates that a CBA must address *both* rest *and* meal periods to supersede state law regarding such periods. Washington courts "presume the legislature uses 'and' as a conjunctive" and accordingly "read 'and' disjunctively only when the legislature clearly intended to do so." *State v. Yusuf*, 21 Wn. App. 2d 960, 969–70, *review denied*, 200 Wn.2d 1011 (2022) (emphasis added); *Bullseye Distrib. LLC v. State Gambling Comm'n*, 127 Wn. App. 231, 239 (2005) ("In certain circumstances, the conjunctive 'and' and the disjunctive 'or' may be substituted for each other if it is clear from the plain language of the statute that it is appropriate to do so." (Emphasis added)).

Read in its entirety, RCW 49.12.187 does not clearly indicate that the term "rest and meal breaks" in the section concerning employees in the construction trades is

---

[4] The parties agree that Cheney is an employee in the construction trades. *See* Dkt. 15 at 17, 19; Dkt. 16 at 5.

intended to be disjunctive. The sentence immediately following this section suggests otherwise. This sentence states: "Employees of public employers may enter into collective bargaining contracts . . . that specifically vary from or supersede, *in part or in total*, rules adopted under this chapter regarding appropriate rest *and* meal periods." RCW 49.12.187 (emphasis added). This language indicates that CBAs covering employees of public employers[5] may supersede rules regarding *either* rest periods *or* meal periods, or both. The statute contains no similar language in the section concerning employees in the construction trades.

"[W]here the legislature includes particular language in one section of a statute but omits it in another, the exclusion is presumed intentional." *Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 680 (2017). Accordingly, RCW 49.12.187 appears to require CBAs covering employees in the construction trades to address *both* rest periods *and* meal periods to supersede state rules regarding either of such periods. A state court is better suited to resolve any doubt concerning the meaning of this statute. *See Moore-Thomas*, 553 F.3d at 1244 ("[A]ny doubt about the right of removal requires resolution in favor of remand.").

PSE asserts that a such a result is inconsistent with the report and recommendation adopted by this Court in *Stafford v. Key Mech. Co. of Washington*, No. C21-5063-BHS-MLP, 2021 WL 2211287, at *1 (W.D. Wash. Apr. 27, 2021), *report and recommendation*

---

[5] PSE does not claim that Cheney is an employee of a public employer. It instead asserts in its notice of removal and in its response to Cheney's motion to remand that Cheney is an employee in the construction trades. *See* Dkt. 1 at 3–4; Dkt. 16 at 5–10.

*adopted*, No. C21-5063 BHS-MLP, 2021 WL 2206496 (W.D. Wash. June 1, 2021). Dkt. 16 at 5–8. The Court disagrees. Unlike the CBAs at issue here, the labor management agreement at issue in *Stafford* addressed *both* rest *and* meal periods. *See id.* at *5. The Court further explained that the labor management agreement "provide[d] rest and meal period requirements, *as both required by RCW 49.12.187 for the exception to apply*."[6] *Id.* (emphasis added). The Court accordingly concluded that, "[b]ecause Plaintiff's rest and meal break claims exist as a result of [the labor management agreement], they are preempted at th[e] first step of the § 301 analysis and do not require further analysis under the second step." *Id.* at *7. Because the CBAs at issue here address do not address rest periods, *Stafford* is of no aid to PSE.

PSE also contends that § 301 of the LMRA preempts Cheney's claims under the Minimum Wage Act concerning failure to pay wages for all hours worked. Dkt. 16 at 12–17. It asserts that, under these claims, Cheney must prove that he had no "control" over when and where he engaged in pre- and post-trip inspections, maintenance, and fueling of any company vehicle to demonstrate that his time spent performing these activities amounts to "hours worked." *Id.* at 12. It contends that an inquiry into whether Cheney had such control requires an examining court to interpret the terms of the relevant CBAs. *Id.* at 12–17.

For several reasons, the Court disagrees. Washington law does not clearly provide that Cheney *must* prove that he had no control over when and where he engaged in these

---

[6] *Stafford* also concerned a plaintiff who was an employee in the construction trades. No. C21-5063-BHS-MLP, 2021 WL 2211287, at *5.

ORDER - 9

pre- and post-trip activities to prove that they qualify for "hours worked." The relevant regulations do not expressly include such a requirement. To the contrary, WAC 296-126-002(2) defines "[h]ours worked" as "all hours during which the employee is *authorized* or required by the employer to be on duty on the employer's premises or at a prescribed work place." (Emphasis added). The definition of "[h]ours worked" under WAC 296-128-600(9) is the same. Any requirement that an employee have no control over a disputed activity appears to contradict this language.

      PSE also fails to persuasively show that Washington law nevertheless requires employees to show that they lacked such control over pre- and post-trip activities for those activities to qualify as hours worked. PSE relies on the following policy statement from the Washington Department of Labor and Industries in support of its argument:

> Preparatory and concluding activities are those activities that are considered integral or necessary to the performance of the job. Those duties performed in readiness and/or completion of the job are hours worked. *When an employee does not have control over when and where such activities may be performed, such activities are hours worked*.

Wash. Dep't of Labor & Indus., Admin. Policy ES.C.2, at 12 (rev. July 19, 2021) (emphasis added).

      However, this policy statement proceeds to state that "[e]xamples of preparatory and concluding activities *that are hours worked* include . . . [p]reparation of equipment for the days operation, i.e., greasing, fueling, warming up vehicles; cleaning vehicles or equipment; loading, and similar activities." *Id.* at 12–13 (emphasis added). This policy statement suggests that pre- and post-trip inspections, maintenance, and fueling of a

company vehicle may categorically qualify as hours worked, regardless of whether an employee has control over when and where such activities are performed.

Nonetheless, it is not clear what weight, if any, a Washington court would give this policy statement when interpreting the term "hours worked" in this case. PSE asserts that, "[w]hen analyzing whether performing pre- and post-trip inspections constitutes 'hours worked' under the MWA, Washington courts apply the 'preparatory and concluding activities' analysis outlined in the Washington Department of Labor and Industries' Administrative Policy ES.C.2." Dkt. 16 at 12 (citing *Robertson v. Valley Commc'ns Ctr.*, 18 Wn. App. 2d 122, 131 n.6 (2021)). But *Robertson* does not entirely support this assertion. The *Robertson* court applied the policy statement in that case because "[b]oth parties rel[ied] on this policy to determine whether preparatory tasks are compensable." 18 Wn. App. 2d at 131 n.6. In so doing, the court made sure to clarify that "[a]n agency policy *can be useful* in determining the meaning of statutory terms." *Id.* (emphasis added). The court did not state that Washington courts always apply this policy statement when analyzing whether pre- and post-trip activities constitute "hours worked" under the Minimum Wage Act. *See id.* This alone creates a doubt favoring remand. *See Moore-Thomas*, 553 F.3d at 1244.

In any event, PSE fails to demonstrate that an inquiry into Cheney's control over when and where he performed the disputed pre- and post-trip activities *requires* an examining court to interpret any CBA. "[A]n application of state law is pre-empted by § 301 of the Labor Management Relations Act of 1947 only if such application *requires* the interpretation of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef*,

*Inc.*, 486 U.S. 399, 413 (1988) (emphasis added); *accord Cramer*, 255 F.3d at 691 ("[A]lleging a hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim: adjudication of the claim must *require* interpretation of a provision of the CBA." (Emphasis added)).

PSE contends that the relevant CBAs contain conflicting terms as to whether they permit employees to perform vehicle inspections at home. Dkt. 16 at 13–14. Although these terms might be relevant to an inquiry into Cheney's control over when and where he performed pre- and post-trip activities, their interpretation is not necessarily required for such an inquiry. The complaint alleges that, "[a]lthough Plaintiff and members of the putative class may have acknowledged written policies that no work is to be performed while at home, *Defendant maintained conflicting policies and practices regarding inspections, fueling, and maintenance*." Dkt. 1-1 ¶ 4.12 (emphasis added). An inquiry into whether PSE maintained such policies and practices does not necessarily require interpretation of any CBA, and PSE fails to show how such an inquiry "'substantially depend[s] on the analysis of a collective-bargaining agreement.'" *Burnside*, 491 F.3d at 1059 (quoting *Caterpillar Inc.*, 482 U.S. at 394).

For these reasons, PSE does not satisfy its burden of demonstrating that removal was proper.

Cheney also requests an award of reasonable attorney fees and costs under 28 U.S.C § 1447(c), asserting that PSE did not have an objectively reasonable basis for removal. Dkt. 15 at 20–21. Under this statute, "[a]n order remanding the case *may* require payment of just costs and any actual expenses, including attorney fees, incurred as a

result of the removal." 28 U.S.C. § 1447(c) (emphasis added). "[A]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable bases for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). Because PSE had an objectively reasonable basis for removal, the Court declines to award Cheney attorney fees and costs.

### III. ORDER

Therefore, it is hereby **ORDERED** that Cheney's motion to remand, Dkt. 15, is **GRANTED in part** and **DENIED in part**. The motion is granted insofar as it seeks to remand the cause to Pierce County Superior Court. The motion is denied insofar as it seeks an award of attorney fees and costs.

The Clerk shall **REMAND** this cause to Pierce County Superior Court and close the case.

Dated this 24th day of August, 2023.

_____
BENJAMIN H. SETTLE
United States District Judge